**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 25-cv-01699-NYW-CYC

TRAVIS KOHN,

      Plaintiff,

v.

JANE HANSEN, in her individual and official capacity,
KENDRA DURAN, in her individual and official capacity,
ROSALINDA MELCHI, in her individual and official capacity,
DESIRAE MEYERS, in her individual and official capacity,
MISTY ZADE, in her individual and official capacity, and
KATHRYN REED, in her individual and official capacity,

      Defendants.

---

### ORDER ON MOTION TO DISMISS

---

This matter is before the Court on CDOC Defendants' Motion to Dismiss Second Amended Complaint (the "Motion" or "Motion to Dismiss"). [Doc. 154, filed October 28, 2025]. The Court has reviewed the Motion and the related briefing, the applicable case law, and the entire docket. For the reasons herein, the Motion to Dismiss is respectfully **GRANTED**.

### BACKGROUND

These facts are taken from the Second Amended Complaint, [Doc. 124], and are presumed true for purposes of this Order. Plaintiff Travis Kohn ("Plaintiff" or "Mr. Kohn") is an inmate in the custody of the Colorado Department of Corrections ("CDOC"). [*Id.* at ¶ 3; Doc. 154 at 2]. At all relevant times, Plaintiff was incarcerated at the Fremont Correctional Facility ("FCF"). [Doc. 124 at ¶ 3]. On December 11, 2021, Mr. Kohn was

playing pickleball when he sustained a knee injury that resulted in "significant swelling, bruising, and an inability to bear weight on his left leg." [*Id*. at ¶ 11]. Plaintiff experienced immediate pain, requiring fellow inmates to help carry him to medical assistance. [*Id*. at ¶¶ 13–14].

Plaintiff was first seen by Defendant Jane Hansen, a registered nurse ("RN") at FCF ("Defendant Hansen"). [*Id.* at ¶¶ 4, 15].[1] Defendant Hansen refused to give him crutches and stated, "that is a lot of paperwork." [*Id.* at ¶ 16]. She instead provided Ibuprofen, Motrin, and an ace bandage while observing that he had a "notable limp." [*Id*. at ¶ 17]. When Plaintiff asked to be transferred from his third-floor cell to a first-floor cell with a bottom bunk, Defendant Hansen refused. [*Id*. at ¶ 19]. Without the cell transfer and crutches, Mr. Kohn was forced to "hobble up and down three flights of stairs" to get to both his meals and assigned work duties. [*Id*. at ¶¶ 20–21]. Using the stairs on his injured leg caused Mr. Kohn an unbearable amount of pain, so he stopped going to the cafeteria for meals which resulted in him losing weight. [*Id*. at ¶¶ 22–23].

Around December 21, 2021, Plaintiff got an x-ray. [*Id*. at ¶ 25]. Defendant Kendra Duran ("Defendant Duran") and non-party Melissa Rogers refused to provide Mr. Kohn with crutches or authorize his transfer to a first-floor cell, but they still noted in his medical report that there was "swelling in the knee." [*Id*. at ¶¶ 25–33]. Mr. Kohn submitted an Offender Grievance on January 6, 2022, regarding the alleged medical negligence of Defendant Hansen, Ms. Rogers, and Defendant Duran and their refusal to give him crutches. [*Id*. at ¶ 35; Doc. 124-2]. Defendant Desirae Meyers ("Defendant Meyers") responded to the January 6, 2022, Offender Grievance on February 8, 2022. [Doc. 124

---

[1] The claims against Defendant Hansen are not at issue in the Motion. *See* [Doc. 154].

at ¶ 38; Doc. 124-2]. Her response asserted that Mr. Kohn's care had been appropriate because he was given crutches on February 2, 2022, and his pain prescriptions were renewed. [Doc. 124 at ¶ 38]. Plaintiff felt that his "care had not been adequate" and he instead continued to lose weight due to "the pain of ambulation without the use of crutches." [*Id*. at ¶¶ 39–40]. Mr. Kohn filed another Offender Grievance on February 7, 2022, regarding FCF staff's refusal to obtain an MRI. [*Id*. at ¶ 42]. Defendant Misty Zade ("Defendant Zade") responded to Plaintiff's grievance on March 1, 2022, and stated that the MRI would not be approved because "Plaintiff had only declared one medical emergency" without attempting other measures. [*Id*. at ¶ 43; Doc. 124-3].

Mr. Kohn submitted eight Request for Sick Call forms between December 22, 2021, to January 31, 2022—spanning the course of 58 days. [Doc. 124 at ¶ 44]. On February 2, 2022, a prison guard "insisted that crutches be given to Plaintiff," which prompted Defendant Duran to prescribe them. [*Id*. at ¶¶ 46–49]. By that time Mr. Kohn's "condition had deteriorated significantly." [*Id*. at ¶ 51]. On February 10, 2022, after being admitted to FCF's medical facility, Plaintiff was treated by Nurse Linda Doyle-Limmer ("Ms. Doyle-Limmer"), "who told [him] that he should have been on crutches from the beginning." [*Id*. at ¶ 52]. She further prescribed Mr. Kohn pain medication, gave him a "180-day standing restriction," ordered that he "not . . . stand for more than one hour," and discussed with Plaintiff the plan of care moving forward. [*Id*. at ¶¶ 53–58]. And on June 30, 2022, Ms. Doyle-Limmer treated Mr. Kohn again and noted that he "need[ed] [a] MRI and possible ortho consult" after testing his range of motion, which had not been tested previously. [*Id*. at ¶¶ 60–64].

On July 11, 2022, after receiving an MRI, Mr. Kohn was diagnosed with "probable

subtle edema within the anterior femoral metaphysis and patella." [*Id*. at ¶ 65]. This means that Plaintiff "had swelling in the bone marrow of the knee including the kneecap." [*Id*. at ¶ 66]. He continues to suffer from knee pain and instability resulting from his injury and the alleged delay in treatment. [*Id*. at ¶¶ 70–73].

Mr. Kohn initiated this case in July 2022. [Doc. 1]. In the operative Second Amended Complaint, Mr. Kohn brings one claim under 42 U.S.C. § 1983: deliberate indifference to serious medical needs in violation of his Eighth Amendment rights. [*Id*. at ¶¶ 74–89]. Defendants Duran, Meyers, and Zade, along with Defendants Rosalinda Melchi ("Defendant Melchi")[2] and Kathryn Reed ("Defendant Reed") (collectively, "CDOC Defendants"), now move to dismiss the claims against them.[3] *See* [*id*.]. They seek dismissal under both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. 154]. The Motion is fully briefed and ripe for disposition. [Doc. 157; Doc. 159].

## LEGAL STANDARD

### I.    Rule 12(b)(1)

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As such, courts "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *Wilderness Soc. v. Kane Cnty.*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011)

---

[2] CDOC Defendants note in their Motion that Defendant Melchi's real name is Rosalinda Vasquez. [Doc. 154 at 1 n.1]. For the purposes of this Order, the Court follows Plaintiff's allegations and refers to her as "Defendant Melchi."

[3] All Defendants are sued in both their individual and official capacities. *See* [Doc. 124 at 1]. "Suing individual defendants in their official capacities under § 1983 . . . is essentially another way of pleading an action against the county or municipality they represent." *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010).

(Gorsuch, J., concurring).   The party invoking federal jurisdiction has the burden of establishing the Court's jurisdiction.  *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005).

Rule 12(b)(1) permits courts to dismiss a complaint for a lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Attacks on subject matter jurisdiction may take two different forms—a facial attack or a factual attack—which implicate different analytical frameworks.  The Tenth Circuit has explained that

> First, a party may make a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint.  In addressing a facial attack, the district court must accept the allegations in the complaint as true.  Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.  In addressing a factual attack, the court does not presume the truthfulness of the complaint's factual allegations, but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).

*United States v. Rodriquez Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) (quotation omitted)).  The issue before the Court "is not whether plaintiff will ultimately succeed on the merits," *Kenney v. Helix TCS, Inc.*, 284 F. Supp. 3d 1186, 1188 (D. Colo. 2018), *aff'd*, 939 F.3d 1106 (10th Cir. 2019), but whether the Court lacks authority to adjudicate the matter, *Glapion v. Castro*, 79 F. Supp. 3d 1207, 1212 (D. Colo. 2015).

Because the Motion includes no supporting exhibits and instead focuses on the sufficiency of the Plaintiff's allegations, the Court construes the CDOC Defendants' Motion as a facial attack on jurisdiction..   The Court therefore accepts the factual allegations in the Complaint as true for purposes of the Defendants' jurisdictional challenges.

## II.      Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The ultimate duty of the Court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## III.     Qualified Immunity

The CDOC Defendants also assert qualified immunity against the individual-capacity claims against them. [Doc. 154 at 10–13]. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A motion to dismiss based on qualified immunity creates a presumption of immunity, *Bledsoe v. Carreno*, 53 F.4th 589, 606 (10th Cir. 2022) (citation omitted), and the burden shifts to the plaintiff to overcome this

presumption, *Hunt v. Montano*, 39 F.4th 1270, 1284 (10th Cir. 2022). To rebut an assertion of qualified immunity, a plaintiff must establish "(1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (citation and quotation omitted). The Court has discretion to decide which of these requirements to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

## ANALYSIS

CDOC Defendants raise several arguments in their Motion to Dismiss. First, they assert that the official capacity claims against them are barred by the Eleventh Amendment. [Doc. 154 at 3]. Next, they argue that Plaintiff failed to allege any facts indicating that the Defendants were directly involved in actions that constituted "deliberate indifference to his serious medical needs in violation of his Eight Amendment rights." [*Id.*] Lastly, the CDOC Defendants assert that Mr. Kohn failed to allege that they "violated a clearly established right to overcome qualified immunity." [*Id.*]. Mr. Kohn counters that the official capacity claims fall within the *Ex parte Young* exception to the Eleventh Amendment, that he has plausibly alleged deliberate indifference, and that the CDOC Defendants are not entitled to qualified immunity. *See generally* [Doc. 157].

The Court resolves the official capacity claims first, then turns to the individual capacity claims and qualified immunity.

## I.    Official Capacity Claims and the Eleventh Amendment

The Eleventh Amendment guarantees that "[s]tates may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity."

*Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010). "This prohibition encompasses suits against state agencies" and "[s]uits against state officials acting in their official capacities." *Id.*  Section 1983 does not abrogate a state's sovereign immunity. *Id.*; *Quern v. Jordan*, 440 U.S. 332, 338–40 (1979).  However, "a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief." *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1214 (10th Cir. 2019) (citing *Ex parte Young*, 209 U.S. 123 (1908)).  The *Ex parte Young* exception applies only to claims of prospective declaratory and injunctive relief. *Hill v. Kemp*, 478 F.3d 1236, 1255 (10th Cir. 2007); *Est. of Schultz v. Brown*, 846 F. App'x 689, 692 (10th Cir. 2021). "If a plaintiff 'only has standing to seek retrospective declaratory relief' [he] 'cannot proceed under *Ex parte Young*.'" *K.A. v. Barnes*, 134 F.4th 1067, 1075 (10th Cir. 2025) (quoting *Collins v. Daniels*, 916 F.3d 1302, 1316 (10th Cir. 2019)).

Here, CDOC Defendants first argue that they are "immune from any claims for monetary damages under the Eleventh Amendment." [Doc. 154 at 5].  Second, they claim that the *Ex parte Young* exception does not apply to this case because the Plaintiff did "not allege any ongoing violation of federal law" and therefore the relief being sought is not prospective in nature.  [*Id*. at 6].

As to the first argument, the Plaintiff concedes and agrees that "monetary damages may not be recovered against CDOC Defendants in their official capacities." [Doc. 157 at 6].  But he maintains that the rest of his claim falls within the *Ex parte Young* exception because ongoing violations of federal law exist.  [*Id*. at 4–6].  Specifically, Plaintiff asserts that the Second Amended Complaint contains allegations of a "continuing deprivation of

8

medical care" and that he is seeking "an order [against the CDOC Defendants] requiring future compliance with the Eighth Amendment."  [*Id.* at 5].

When deciding whether a request for injunctive relief falls within the *Ex parte Young* exception, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Verizon Md., Inc. v. Pub. Serv. Comm'n.*, 535 U.S. 635, 645 (2002) (quotation and alteration omitted).  Here, Mr. Kohn requests that the Court "[o]rder injunctive relief," but this request is not connected to any alleged continuing violations or threatened harm.  [Doc. 124 at 13]; *see Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1215 (10th Cir. 2022).  Throughout the Second Amended Complaint, Mr. Kohn uniformly uses past tense to describe the CDOC Defendants' actions.  *See Chilcoat*, 41 F.4th at 1214.  *See generally* [Doc. 24].  Mr. Kohn also eventually received a higher "quality of treatment" from Ms. Doyle-Limmer, who prescribed Plaintiff more pain medication, gave him a 180-day standing restriction, and ordered him an MRI.  [Doc. 124 at ¶¶ 52–64].  While Plaintiff asserts that there is an "ongoing denial of adequate medical treatment at [FCF]," there are no specific allegations as to what treatment is missing or how that denial of treatment threatens him going forward.  [Doc. 157 at 5].  *See generally* [Doc. 124].  Despite the vague request for "injunctive relief," Mr. Kohn never indicates, much less plausibly alleges, what prospective injunctive relief he wants against the CDOC Defendants.  *See* [Doc. 124 at 13].

The Court respectfully agrees with Defendants that Plaintiff has not adequately alleged a claim for prospective injunctive or declaratory relief based on an ongoing violation of federal law.  Mr. Kohn's claims against CDOC Defendants in their official

capacities are not saved by the "prospective relief" exception of *Ex parte Young* because he has, at most, established "standing to seek retrospective declaratory relief." *Collins*, 916 F.3d at 1316; *see Hakeem v. Kan. Dep't. of Hum. Servs., Child Support Enf't Div.*, No. 22-3144, 2022 WL 16642268, at *5 (10th Cir. Nov. 3, 2022). The Motion to Dismiss is respectfully **GRANTED** as to Plaintiff's claims against the CDOC Defendants in their official capacities, and these claims are **DISMISSED without prejudice**.

## II.     Individual Capacity Claims and Deliberate Indifference

The Court next considers whether the Second Amended Complaint states a plausible claim for deliberate indifference under the Eighth Amendment. "A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). To establish a constitutional liability based on medical deliberate indifference, a plaintiff must make both an objective and a subjective showing. *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component requires the plaintiff to allege objective facts that demonstrate that the constitutional deprivation was "sufficiently serious." *Mata*, 427 F.3d at 751 (citing *Farmer*, 511 U.S. at 834). The subjective component requires the plaintiff to sufficiently allege the defendant's culpable state of mind, i.e., that the defendant knew of and disregarded a substantial risk of harm to the plaintiff. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001). Mere negligence, however, does not establish culpability. *Farmer*, 511 U.S. at 835. Instead, this requirement is satisfied if the official "knows of and disregards an excessive risk to inmate health or safety." *Sealock*, 218 F.3d at 1209 (quoting *Farmer*, 511 U.S. at 837); *see also Mata*, 427 F.3d at 745

(characterizing subjective component inquiry as: "[W]ere the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?").

### A. Defendants Reed, Meyers, and Zade

With respect to Defendants Reed, Meyers, and Zade, the CDOC Defendants contend that the Second Amended Complaint fails to sufficiently allege an Eighth Amendment violation. [Doc. 154 at 8–9]. They point to the fact that all the allegations against these specific Defendants were through the grievance process, which alone is "insufficient to establish . . . personal participation." [*Id*.]

To state a claim against the CDOC Defendants in their individual capacities, Plaintiff must allege personal participation in the alleged constitutional violation. *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). This requires an "affirmative link" between the defendant's conduct and the alleged violation. *Worrell v. Henry*, 219 F.3d 1197, 1214 (10th Cir. 2000) (quotation omitted). Applying these principles, the Court respectfully agrees that Plaintiff fails to allege personal participation as to Defendant Reed. As for Defendant Meyers and Defendant Zade, however, the Court need not resolve personal participation, because Plaintiff fails to adequately allege deliberate indifference for these defendants.

The Court begins with Defendant Reed, who is listed as a Grievance Coordinator on the attached grievance documents. [Doc. 124-2]. But aside from naming her as a defendant, Plaintiff puts forward no allegations against her in the Second Amended Complaint. *See* [Doc. 124]. It is unclear how, if at all, Plaintiff believes Defendant Reed participated in the alleged Eighth Amendment violation. In any event, the act of responding to or denying an inmate's grievance, without more, does not satisfy the

11

personal participation requirement under § 1983. *Henderson v. Fisher*, 767 F. App'x 670, 673 (10th Cir. 2019) (quoting *Requena v. Roberts*, 893 F.3d 1195, 1216 (10th Cir. 2018)). Plaintiff therefore fails to plausibly allege that Defendant Reed personally participated in any constitutional violation.

Defendant Meyers and Defendant Zade were also involved only in the grievance process. Unlike Defendant Reed, however, the Second Amended Complaint includes allegations that these Defendants erroneously denied Plaintiff's grievances complaining of inadequate medical care. *See* [Doc. 124 at ¶¶ 38–43]. It is unclear if this amounts to personal participation. While "the denial of grievances alone does not establish personal participation," the Tenth Circuit has suggested that denying a grievance may constitute personal participation if the prison employee had "an independent responsibility for the wrong in question and the grievance provides the necessary notice of the wrong or the effective means to correct it." *Arocho v. Nafziger*, 367 F. App'x 942, 955 (10th Cir. 2010) (quotation omitted). But even assuming Defendants Meyers and Zade personally participated by responding to Plaintiff's grievances, the allegations do not plausibly establish deliberate indifference because nothing in their responses suggests that either Defendant was responsible for denying or delaying Plaintiff's access to medical care.

By alleging that Defendants Meyers and Zade denied grievances requesting medical attention, Plaintiff asserts a gatekeeper theory of deliberate indifference. *See* [Doc. 157 at 7]. Gatekeeper liability arises when a prison official "prevent[s] an inmate from receiving treatment or den[ies] him access to medical personnel capable of evaluating the need for treatment." *Sealock*, 218 F.3d at 1211. A prison employee whose role is limited to serving as a gatekeeper to medical providers capable of providing

treatment may be liable for deliberate indifference if she intentionally denies or delays access to medical care.  *Mata*, 427 F.3d at 751.

Mr. Kohn alleges that on February 8, 2022, Defendant Meyers wrote in response to the January 6, 2022, Offender Grievance that Plaintiff's "care had been appropriate." [Doc. 124 at ¶ 38].  She included in her response that Mr. Kohn "had been given crutches on February 2, 2022 and his pain prescriptions were renewed."  [*Id*.].  Yet there are no allegations that Defendant Meyers prevented Mr. Kohn from seeing CDOC medical staff or that she deliberately denied or delayed him treatment.  Mr. Kohn asserts that Defendant Meyers's response was "not based on actual facts" and his "care had not been adequate." [*Id*. at ¶¶ 39–41].  However, in his grievance he stated that "[c]rutches will work," and by the time that Defendant Meyers had responded he had received both crutches and a renewed prescription for pain medication, and he was scheduled for a follow up appointment with FCF's medical staff. [Doc. 124-2; Doc. 124 at ¶ 38].  Mr. Kohn does not explain how Defendant Meyers could have "prevent[ed]" treatment or "den[ied] him access to medical personnel," *Sealock*, 218 F.3d at 1211, when he had already received the requested treatment and been scheduled for another appointment at the time she responded to his grievance.  If anything, Defendant Meyers's actions reflect deference to FCF's medical staff's judgment on the recent treatment given to Mr. Kohn.  *See Deming v. Traci A.*, No. 23-cv-00258-STV, 2024 WL 5168132, at *8 (D. Colo. Dec. 19, 2024) ("LCDC's medical personnel prescribed a course of treatment, and the Court cannot say that the treatment was so outrageous that Defendant Shaffer was subjectively deliberately indifferent to Plaintiff's medical condition when Defendant Shaffer deferred to those medical providers.").  Plaintiff fails to plausibly allege that Defendant Meyers's reliance on

treatment prescribed by medical personnel constituted deliberate indifference to his medical needs.

The Court applies the same analysis to Plaintiff's claim against Defendant Zade. On March 1, 2022, Defendant Zade denied an Offender Grievance that was filed on February 7, 2022 and "based on Defendants refusing to order an MRI." [Doc. 124 at ¶¶ 42–43]. Defendant Zade wrote in her denial that Mr. Kohn had only established one medical emergency and there needed to be proof of other measures taken to receive an MRI. [*Id*. at ¶ 43].

The context surrounding the grievance that Defendant Zade denied does not plausibly establish that she intentionally delayed or denied Plaintiff's access to medical care. *Mata*, 427 F.3d at 751; *see* [Doc. 124-3]. Mr. Kohn had been evaluated by Ms. Doyle-Limmer on February 10, 2022, just three days after he submitted the grievance. [Doc. 124 at ¶ 52]. Ms. Doyle-Limmer ordered a standing restriction, a continuing prescription for crutches, a follow-up appointment, and other interventions that Plaintiff describes as an improved "quality of treatment." [*Id.* at ¶¶ 52–59]. Ms. Doyle-Limmer did not order an MRI at that time—a decision Plaintiff does not challenge. *See* [*id.* at ¶¶ 60–63]. When Defendant Zade responded to the grievance on March 1, she had not personally examined Plaintiff. [Doc. 124 at ¶ 52]. Instead, Defendant Zade denied Plaintiff's request for an MRI based on her review of his grievance and medical records. [Doc. 124-3]. A contrary decision would have required her to second-guess the medical judgment of a provider—Ms. Doyle-Limmer—who had recently examined Plaintiff and ordered treatment. *See Paulsen v. Hickenlooper*, No. 18-cv-01396-PAB-KMT, 2019 WL 4412695, at *2 (D. Colo. Sept. 16, 2019) (finding no clear error in dismissal of claims

14

where the plaintiff did not allege that "[d]efendants had authority over the protocol for treating plaintiff's medical condition or that they personally participated in any of the alleged treatment decisions underlying plaintiff's grievances"); *Deming*, 2024 WL 5168132, at *8 (dismissing claims against defendant who deferred to treatment decisions by medical providers who had examined the plaintiff).  Moreover, the grievance response states that Mr. Kohn had a follow-up appointment scheduled for later in March,[4] undermining any inference that Defendant Zade was withholding medical care or "intentionally interfering with the treatment once prescribed."  *Casanova v. Ulibarri*, 622 F. App'x 724, 728 (10th Cir. 2015) (quoting *Martin v. Bd. of Cnty. Comm'rs*, 909 F.2d 402, 406 (10th Cir. 1990)).

In sum, the Second Amended Complaint contains insufficient facts to plausibly allege that Defendant Reed personally participated in any constitutional violation or that Defendants Meyers and Zade were subjectively deliberately indifferent to Mr. Kohn's medical needs.  Accordingly, the Motion to Dismiss is **GRANTED** with respect to Defendants Reed, Meyers, and Zade in their individual capacities, and Plaintiff's claim is **DISMISSED without prejudice** as to these Defendants.

### B.    Defendant Melchi

As for Defendant Melchi, the CDOC Defendants assert that Plaintiff's "solitary allegation that she input a note in Kohn's medical records indicating that he had not shown up for an appointment, without more, could not possibly establish personal participation in a constitutional violation or deliberate indifference to serious medical needs."  [Doc.

---

[4] Plaintiff's medical records indicate that his next appointment occurred on March 18, 2022, with Ms. Doyle-Limmer.  [Doc. 124-1 at 4–5].

15

159 at 5]. The Court respectfully agrees. The only mention of Defendant Melchi in the Second Amended Complaint stated that on January 28, 2022, she "filed a report that Plaintiff missed his appointment." [Doc. 124 at ¶ 36].

Even construing this factual allegation in the light most favorable to him, Mr. Kohn has failed to provide non-conclusory allegations supporting an inference that Defendant Melchi "knew of and disregarded an excessive risk to [Mr. Kohn's] health or safety" to state a cognizable deliberate indifference claim. *Moore v. Hodge*, No. 23-1209, 2024 WL 278393 at *3 (10th Cir. Jan. 25, 2024); *Farmer*, 511 U.S. at 837. Nor is that single allegation sufficient to establish Defendant Melchi personally participated in some other act of deliberate indifference. Accordingly, the Motion to Dismiss is **GRANTED** with respect to Defendant Melchi in her individual capacity, and Plaintiff's claim against Defendant Melchi is **DISMISSED without prejudice**.[5]

### C. Defendant Duran

Lastly, with respect to Defendant Duran the CDOC Defendants argue that the Second Amended Complaint does not contain allegations that "plausibly establish that Duran was subjectively aware of a substantial risk of serious harm to Kohn or that she deliberately disregarded such a risk." [Doc. 154 at 10]. Defendants further contend that nowhere in the Second Amended Complaint does it indicate that Defendant Duran knew

---

[5] In his Response, Mr. Kohn alleges that "Defendant Melchi falsely recorded that Plaintiff missed a medical appointment when she knew he was immobile," which he says amounts to "a gatekeeper-type deliberate indifference." [Doc. 157 at 6–7]. However, the allegations that Defendant Melchi "falsely recorded" information and that she "knew he was immobile" do not appear in Plaintiff's Second Amended Complaint. The Court declines to consider allegations made for the first time in a response brief. *White v. Chafin*, 862 F.3d 1065, 106 & n.1 (10th Cir. 2017); *see In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) ("The plaintiff[] may not effectively amend [his] Complaint by alleging new facts in [his] response to a motion to dismiss.").

"the nature or extent of [Mr. Kohn's] discomfort" or that "he was visibly injured such that anyone looking at him would know that he was experiencing significant pain or limitations." [*Id*.].[6] Even taking the well-pleaded allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Court respectfully agrees that Plaintiff fails to plausibly allege that Defendant Duran knew that Mr. Kohn faced a substantial risk of harm and consciously disregarded that risk. *See Moore*, 2024 WL 278393, at *3.

To satisfy the subjective component of the deliberate indifference test, a prisoner must "present evidence of the prison official's culpable state of mind." *Mata*, 427 F.3d at 751. "[T]he subjective component is not satisfied, absent an extraordinary degree of neglect, where a [provider] merely exercises [her] considered medical judgment." *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006). Courts within this Circuit have concluded that assessing symptoms and determining the proper course of treatment are matters of medical judgment. *See, e.g., id.* at 1234; *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992); *Sherman v. Klenke*, No. 11-cv-03091-PAB-CBS, 2013 WL 1283835, at *2 (D. Colo. Mar. 28, 2013). Furthermore, "[a] claim is . . . actionable only in cases where the need for additional treatment or referral to a medical specialist is obvious." *Self*, 439 F.3d at 1232.

Plaintiff's allegations about Defendant Duran do not rise to the level of "extraordinary . . . neglect" required to meet the high threshold of a constitutional

---

[6] Plaintiff asserts in his Response that Defendant Duran had "ignored visible pain, denied crutches, and falsified records to conceal inaction" which had "establish[ed] a gatekeeper-type deliberate indifference under *Sealock*." [Doc. 157 at 7]. But as explained above regarding Defendant Melchi, these facts should have been raised in Plaintiff's Second Amended Complaint, and the Court declines to consider facts alleged for the first time in a response brief. *See supra* note 5.

violation.  *See id*.  On either December 13 or 21, 2021, Defendant Duran noted "swelling in [Plaintiff's] knee."  [Doc. 124 at ¶ 26; Doc. 124-1 at 17].  Then, on or around December 21, 2021, Defendant Duran conducted an x-ray but noted nothing concerning in the x-ray.  [Doc. 124 at ¶ 25; Doc. 124-1 at 17–18].  According to Plaintiff, Defendant Duran "refused to provide crutches or a prescription for transfer to a bottom bunk on the first floor."  [Doc. 124 at ¶ 25].  But the Second Amended Complaint does not adequately allege that it was "obvious" that this "additional treatment" was necessary at the time that Plaintiff was seen by Defendant Duran.  *Self*, 439 F.3d at 1232; *see* [Doc. 124].  Plaintiff lists the Request for Sick Call forms in the Second Amended Complaint that describe the pain he was experiencing, but these began on December 22, 2021, the day after Defendant Duran treated Mr. Kohn.  [*Id*. at ¶¶ 25, 44].  Moreover, Plaintiff had been evaluated by another medical provider ten days earlier and had been prescribed pain medication.  [*Id.* at ¶¶ 15–18].  The Second Amended Complaint contains no allegations regarding what symptoms Plaintiff reported to Defendant Duran or what additional factors Defendant Duran observed that would have made the need for further treatment obvious at that time.  *See* [*id*.]; *Est. of Burgaz ex rel. Zommer v. Bd. of Cnty. Comm'rs*, 30 F.4th 1181, 1186 (10th Cir. 2022) (reiterating that deliberate indifference does not exist where a prison employee is unaware of a risk or takes reasonable steps to alleviate a known risk).  At most, these allegations reflect ordinary negligence or a mere disagreement with Defendant Duran's medical judgment that the pain medication Plaintiff had received was sufficient—not the extraordinary degree of neglect required to establish deliberate indifference.  *See Self*, 439 F.3d at 1234 (holding that allegations challenging the adequacy of medical treatment, rather than the denial of treatment, did not establish deliberate indifference).

18

For the foregoing reasons, Plaintiff has not plausibly alleged that Defendant Duran had the requisite state of mind to meet the deliberate indifference standard. *See Mata*, 427 F.3d at 751. Accordingly, the Motion to Dismiss is respectfully **GRANTED** with respect to Defendant Duran in her individual capacity, and Plaintiff's claim against Defendant Duran is **DISMISSED without prejudice**. And because the Court concludes that Plaintiff fails to allege a constitutional violation as to any CDOC Defendant, the Court need not consider the remaining "clearly established" prong of qualified immunity. *Pearson*, 555 U.S. at 236; *see also, e.g., Wilson v. Foster*, No. 15-cv-02721-CMA-MJW, 2017 WL 6033693, at *5 (D. Colo. Oct. 11, 2017).

**CONCLUSION**

For the reasons set forth above, **IT IS ORDERED** that:

(1)    The CDOC Defendants' Motion to Dismiss Second Amended Complaint [Doc. 154] is **GRANTED**; and

(2)    Plaintiff's claims against Defendants Rosalinda Melchi, Kathryn Reed, Kendra Duran, Desirae Meyer, and Misty Zade are **DISMISSED without prejudice**.[7]

---

[7] Plaintiff's official-capacity claims are dismissed without prejudice because a dismissal on Eleventh Amendment grounds must be without prejudice. *See Colby v. Herrick*, 849 F.3d 1273, 1278 (10th Cir. 2017). As for the individual capacity claims, a dismissal under Rule 12(b)(6) may be with prejudice only if granting leave to amend would be futile. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). The CDOC Defendants do not contend that amendment would be futile, and the Court need not make their arguments for them. *United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself.").

DATED:  July 30, 2026                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge